253 P.2d 309

**BACA v. CHAFFIN.**

No. 5484.

Supreme Court of New Mexico.

Jan. 28, 1953.

Chester A. Hunker, Santa Fe, for appellant.

Robert E. Fox, Santa Fe, for appellee.

LUJAN, Justice.

The sole question is whether the district court erred in setting aside an order issued by the Chief of the Division of Liquor Control revoking the appellee's retail liquor license for the sale of intoxicating liquor in the City of Tucumcari.

He will be hereafter referred to as the Chief and the defendant as the appellee.

The appellee was granted, by the Chief's predecessor in office, a retail liquor license for the sale of intoxicating liquor in the City of Tucumcari, but before he had established his business the Chief filed a charge against him under Section 61–601 of the 1941 Compilation, seeking to revoke his license on the ground that the license was issued illegally in that there was no proper posting of the premises as required by Section 1, Chapter 134, N.M.L.1947, which is as follows:

"* * * Before any * * * new * * * dispensers license is issued for a location where alcoholic liquors are not now being sold the chief of division shall cause a notice of the application therefor to be posted conspicuously *on the outside of the front wall or front entrance of* the immediate premises for which such liquor license * * * is sought. .* * *"

The parties herein appeared in person and by counsel and after taking of testimony the Chief entered an order revoking the appellee's retail liquor license on the ground that the premises were not posted as required by the provisions of the above statute.

The appellee prosecuted, in strict compliance with the statute, an appeal from the order of revocation of his license to the District Court of Santa Fe County as is provided for by applicable statute, wherein the record as made at the trial before the Chief was filed, including the transcript of evidence heard before him. The trial

of the appeal in the district court is not deemed a trial de novo, but is to be tried only on the record made at the hearing before the Chief, from which the appeal is taken to the Santa Fe County District Court. In the case at bar the trial court reviewed the testimony adduced at the hearing before the Chief and directed that the order of revocation issued by him be vacated and set aside.

The testimony given at the hearing before the Chief to establish that the license was issued illegally on the ground that appellee's premises were not posted as required by statute, is as follows:

Mr. Harry Garrison called by the State, testified as follows:

*    *    *    *    *    *

"Q. You saw no placard posted on the door or on the fence, any placard of any type? A. That wasn't what you asked me. You asked me about being posted.

"Q. Yes. A. I did see a placard.

"Q. Where was the placard? A. On the front door. The door that sets back 25 or 30 feet from the south side.

"Q. When did you see the placard? A. On the morning of December 9.

"Q. Did you have occasion to see the placard after that time? A. No, sir, I did not. I could have if it—

"Q. The first time you saw the placard— A. (Interrupting) I beg your pardon. I am sorry, I did go back and looked at it.

"Q. What day was that? A. The same day.

*    *    *    *    *    *

"Q. Did you observe what was on the placard? A. Nothing only what is on the application for liquor license.

*    *    *    *    *    *

"Q. Your attention was called to it? A. My attention was called to it.

*    *    *    *    *    *

"Q. You didn't have occasion to go by— A. (Interrupting) I beg your pardon. I went back on the 10th.

"Q. Was it still there? A. Yes, sir.

"Q. Did you go back on the 20th or 19th? A. No, sir, I did not, sir.

*    *    *    *    *    *

"Q. After December 9th did you have occasion to go up and down that street on several occasions? A. Well, I did, sir. I travel the street quite a bit.

"Q. Did you bother to look in and see if the placard was still there? A. I travel the street at night mostly, sir, and I couldn't see. I would go to work after dark and naturally I didn't have that on my mind. I had my business on my mind."

On cross-examination he testified:

\*　　\*　　\*　　\*　　\*　　\*

"Q. In other words the building that you saw posted is two doors or two lots from your business? A. It is about four doors, sir.

\*　　\*　　\*　　\*　　\*　　\*

"Q. The notice that you saw posted was placed where? A. Right here.

"Q. Mark that with an 'X'. A. The door right here.

\*　　\*　　\*　　\*　　\*　　\*

"Q. You say that you saw the poster on the premises on December 9th, twice on that day? A. I did.

"Q. That you saw it again on the 10th? A. Right.

\*　　\*　　\*　　\*　　\*　　\*

"Q. So the fact that you didn't see it all that time doesn't mean that it wasn't there then? A. That's right. I couldn't swear it wasn't. I didn't go back at it every morning to see if it was there or had been taken down."

Mr. Kenneth Ayers called by the State testified:

"Q. On December 10, Mr. Ayers, of 1950, did you notice a placard in regard to a liquor license? A. On the front of this door.

"Q. Did you see it? A. Yes.

"Q. You saw it on December 10th? A. Yes.

"Q. Did you actually go right up to the door and read it? A. I seen them. I have posted them. I know what they are. I didn't go up to the door, I went up to the steps.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Did you visit the premises say, any time prior to December 10th. Immediately prior to December 10th? A. No.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Did you visit the premises shortly subsequent to December 10th, 1950? A. You mean after.

"Q. After December 10th? A. No, I just drove by several times.

\*　　\*　　\*　　\*　　\*　　\*

"Q. It was posted on this front door? A. On the front door."

\*　　\*　　\*　　\*　　\*　　\*

On cross-examination he testified.

"Q. Was this notice of general discussion in Tucumcari at the time? A. Considerable.

"Q. Considerable discussion? A. Yes.

"Q. Was that discussion limited to people in the liquor business or was it people in that general area where the bar was to be or what would you say about it? A. Generally, mostly all over Tucumcari.

\* \* \* \* \* \*

"Q. Are you here today in opposition to the granting of the license? A. Yes."

On re-direct examination he testified:

\* \* \* \* \* \*

"Q. Was that, on December 10th, the first notice you had that there was going to be a business there? A. No.

"Q. You heard about it before? A. Yes.

"Q. When? A. It was around, it was in the last part of November when we heard about it. I read about it in the paper when the City turned it down.

"Q. You didn't go down and bother to see if it was posted or not at that time? A. No, because we read in the paper that the City had denied the license. We didn't pay no more attention to it."

There was also testimony that the premises in question were posted from November 30, 1950 to January 3, 1951, and this testimony was not contradicted.

Based upon the foregoing testimony the Chief made the following finding:

"That the above acquired license was issued contrary to law in that there was an improper Posting."

■ The question to be determined is whether the above finding is supported by some evidence of probative value. If so, it is conclusive, Yarborough v. Montoya, 54 N.M. 91, 214 P.2d 769, and we must affirm the order. The record leaves no doubt as to the proper answer.

■ There must be some substantial evidence of probative character to sustain the finding of the liquor authority, or else its decision will be set aside, but its presence is absolutely necessary. A finding without some evidence of probative value would be arbitrary and baseless. A fair trial is the antithesis of an arbitrary trial. A trial which proceeds to a conclusion resulting in a quasi-judicial determination depriving appellee of legal rights, can well be said to be unfair if the determination is necessarily based on a finding of fact which is not supported by proof of a probative character.

■ Based solely upon the testimony adduced at the hearing before the Chief, the district court made the following finding, which is supported by the record.

"The record of the proceedings before the Chief of the Division of Liquor Control fails to disclose any competent, credible, substantial or relevant testimony or other evidence establishing the fact that petitioner's premises were not posted or were improperly posted prior to the issuance of the license, in fact, such record shows that the premises were posted properly and

that the public had full notice that a liquor license had been applied for to be used at such location."

It follows that the action of the Chief in revoking the license upon the ground that it was issued illegally in that there was no proper posting of the premises lacks the necessary factual support. We conclude that the trial court did not err in vacating and setting aside the order of the Chief revoking appellee's license.

We have not considered other questions raised in appellee's brief, and intimate no opinion on them, since the point already discussed is determinative.

The judgment is affirmed.

It is so ordered

SADLER, C. J., and McGHEE, COMPTON and COORS, JJ., concur.